# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

CARLTON MCINTOSH,

      Petitioner,

      v.

UNITED STATES OF AMERICA,

      Respondent.

No. 13 C 4192
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Carlton McIntosh ("petitioner") was convicted of failing to surrender for service of a prison sentence. The short trial was before me sitting without a jury. I imposed a sentence including 60 months in custody. He appealed claiming there was insufficient evidence to convict and there was no statutory authority for imposition of the sentence. The Court of Appeals affirmed. *United States v. McIntosh*, 702 F.3d 381 (7th Cir. 2012). The Supreme Court denied certiorari. He seeks relief under 28 U.S.C. § 2255.

The chain of events leading to conviction began in another courtroom before another judge. In that criminal case the charge was escape from the community confinement center where he was serving time (the "Escape case"), imposed by Judge Pallmeyer before whom he had been convicted of money laundering.

The money laundering led to prison time and a period of supervised release. The supervised release was revoked twice. For violating the conditions of supervised relief, petitioner was given a sentence of incarceration for 16 months. The supervised release violation was not typical of its genre.[1] The revocation of release was imposed after a finding that

---

[1] Three of his violations were of the more common list. In petitioner's case it was failure to pay restitution when he had money and bank accounts, failure to report an arrest and reporting an invalid place for his employment.

petitioner had used false identification documents to open bank accounts and obtain money that was not his. He was given a specific surrender date and was ordered to self-report for his 16 months. I infer that self-surrender appeared to be appropriate because petitioner (whom I have seen and heard) possesses a non-threatening demeanor, is non-violent and speaks in a reasonable manner when before the court and, at least for a short while, appears to be credible.[2]

There appears no dispute that petitioner wanted self-surrender because, as he communicated to the court in his Escape case, his prior experience in the Bureau of Prisons included lengthy transit which may well result in temporary placements and take months to get to the designated institution. He said or wrote that "transit is not fun." It is well known among District Judges that transit is not popular among convicts. The vast majority of inmates who are eligible for self-surrender will ask for that condition to be imposed.

The date for self-surrender in the Escape case was January 8, 2010. It was ordered November 25, 2009 and also on December 10, 2009. Petitioner was present at these times and asked no questions. The only step he took after December 10 was to come in to court on December 16, 2009 and request surrender to a designated institution (as opposed to surrendering to a Marshal at the courthouse). When granting the right to surrender at the designated institution the court did not change the surrender date.

On January 5, 2010 petitioner finally filed a motion asking for a stay of the January 8 surrender date. The district court denied the motion. The court order which gave petitioner the

---

[2] Before I heard his testimony in his own defense in this case, I had paid little, if any, attention to the exceptional depth of his criminal history. When ruling on admissibility of priors for impeachment, I ordinarily confine my ruling to the bare bones of title of offense and sentence and date of conviction. Generally I do not place much weight on the value of prior convictions in determining the credibility of witnesses. At sentencing the details of past convictions becomes quite important. Petitioner has, at a minimum, seven convictions for various forms of financial fraud and has had supervised release revoked on one of his sentences because of bank fraud committed but not charged in three other states. There may be other convictions but the bare titles of the offenses, probably but not necessarily, were based on fraud conduct.

right to surrender at the designated institution (as opposed to surrendering at the courthouse) did not specify the institution (it is uncommon for the BOP to have made the designation at the time the court orders surrender). The U.S. Marshal's Service is the most likely agency to have initial notice of the designated institution, and the probation officer told petitioner the location of the Marshal's Service on the 24th Floor of the courthouse.

Petitioner did not surrender on January 8 but the court did not issue a bench warrant for petitioner until January 29. To save the cost of enforcement the prosecution may not seek a warrant until it becomes crystal clear that the convict is not going to surrender himself. When the Deputy Marshal went to the address petitioner had been using for his residence to execute the bench warrant, the place seemed vacant and not in good repair. The officers called petitioner's cell phone and then called other places where he might be found. When they made contact the petitioner declared that he had already talked to the judge and said "I'm going to turn myself in." In a later conversation with Deputy Patel, the man who told petitioner of the bench warrant, the deputy told petitioner to surrender himself at the courthouse lobby the next day at 8:30 a.m. Petitioner responded that he would surrender as required. He did not surrender.

What he did do was rent a car and drive to Nashville, Tennessee where he failed to return the car on the due date of January 30. He stayed in Nashville until February 3 when he was arrested.

He did answer the law enforcement officer who spoke to him after his arrest. He reported to Secret Service agents (1) that he knew his supervised release had been revoked, (2) that self-surrender to the Marshals had been ordered by the court and (3) that the Marshals were looking for him. Petitioner decided, he said, not to surrender in order that he could complete his yet unfinished appeal of the supervised release revocation.

3

Petitioner testified at the trial in this case. He admitted knowing that he had been given instructions by Deputy Marshals and by the district judge's clerk, all of them clearly telling him to turn himself in. Instead he went to Nashville. He abandoned his "preparing an appeal" reason for not surrendering. His trial claim was that he did not surrender because he was waiting for the BOP to designate a particular institution so he could avoid transit.

I found petitioner guilty of willfully refusing to surrender in accordance with the court order. All the elements of the offense were proven beyond a reasonable doubt. Petitioner knew what his obligations were. He admitted that he knew he was obliged to surrender on January 8 and then didn't do so. Petitioner was untruthful at trial.

In this § 2255 petition the petitioner attacks the quality of his representation. The performance of counsel has to fall below a clear standard of reasonable quality, and even if it did the errors of counsel have to be shown to have made a difference. There is, finally, a strong presumption that, in the context of the overall case, the decisions of counsel may be sound. See *Strickland v. Washington,* 466 U.S. 668, 694 (1984), *Koons v. United States,* 639 F.3d 348, 351 (7th Cir. 2011), *Brown v. Finnan,* 598 F.3d 416, 422 (7[th]Cir. 2010); all cases correctly cited by the prosecution. The bottom line is that it is difficult for petitioners to succeed on claims of ineffective representation by counsel.

On this standard the decisions of defense counsel not to call, as witnesses, Judge Pallmeyer's clerk, the duty federal defender, and Deputy Marshal Robinson are beyond reproach. The theme sounded by petitioner is that he received different information from each of these witnesses and other witnesses beside. The differences are simply not material. Someone may, for example, have told petitioner that there was an arrest warrant for petitioner when in fact it was a bench warrant requiring appearance in court. The relevant point is that *no one* told him he

4

did not have to surrender himself soon nor did any officer of the court or the executive branch tell him that he did not have to surrender himself on January 8. In short, the inescapable inference and irrefutable evidence is that January 8 was the date he had to surrender and from that date on he was under the orders of the court to surrender to law enforcement.

Petitioner wanted to offer hearsay testimony and opinion evidence from his former wife and step-daughter that they believed that McIntosh did not think he had to turn himself in on January 8 and had an explanation of why he left Illinois. The evidence was cumulative at best and irrelevant. The witnesses had no personal knowledge of the surrender date and all they had to say about his mental processes was gleaned from what he said to them. Again the issue is not petitioner's knowledge of the place of self-surrender and various other mechanics of that process; the crime is his knowing and willful failure to surrender himself on January 8. The evidence is clear that he knew the date and he knew there were many places he could surrender himself even though the nearest place of surrender was not his preferred destination. He told Deputy Marshals that he would turn himself in the next morning. He told another he would turn himself in "today". He told the Secret Service that he knew he had to turn himself in because the Marshals were looking for him and because the judge's clerk told him to surrender immediately.

It was and is my judgment that petitioner wanted witnesses and documents which might provide evidence of what happened in other cases and at other times. None of it would have weakened the evidence that his court ordered surrender date was known to him from the day it was established and he did not comply with that order. A reasonable defense counsel could properly decide to forego the evidence that petitioner wanted.

In any event, the evidence was so strong that there is no reasonable possibility that the defense that petitioner wanted to make would succeed; the result would not have been any different.[3]

One of the last bits of the attack on his defense counsel is the failure of his defense counsel to object to the fact that, after his arrest in Tennessee, over 30 fraudulent credit cards were found in his car. Defense counsel, though, did object and I sustained the objection. Once on the witness stand petitioner testified that he had an innocent reason to go to Nashville and intended to return to Chicago to surrender. I found that petitioner opened the door to cross-examination questions about the phony credit cards he had with him in Nashville, a fact which, in connection with other evidence, might lead (and did lead) the finder of fact to reject his claim that his next step was to return to Chicago and surrender himself.

There is an assertion that defense counsel should have moved to suppress the phony credit cards on grounds they were illegally seized. A motion to suppress was weakened by the fact that there was a warrant to take petitioner into custody and his car was not his car because he kept the rental car beyond the contracted time of possession and use. Defense counsel could properly conclude that a motion to suppress was not justified. In any event, the failure to seek suppression could have been raised on direct appeal as a ground for finding trial counsel to have been ineffective. It was not so raised. It is a defaulted claim.

There is a final complaint about defense counsel who, petitioner alleges, did not tell his client that there was a plea "time served" offer from the prosecution. The defense counsel has

---

[3] The petitioner wanted to argue that the judge in the Escape case did not have jurisdiction to order petitioner to surrender to the BOP would be, in the reasonable judgment of defense counsel, an argument not worth making. The order petitioner wanted to attack is common practice throughout the federal system. Most, if not all, such orders to surrender to a designated BOP institution are entered, as they were here, because the convicted defendant wanted the benefits of such surrender.

said under oath that the prosecution never made a plea offer. The prosecution has declared that it never made a formal offer of "time served" plea.

Petitioner's response to the lawyer's affidavit is a good example of his shifting ground at trial and in this current proceeding. He started here with the assertion that, after the trial was over, his lawyer told him "I should have taken the time served offered by the government." But, even if his lawyer had said this, the government is denying that it made an offer. The government's denial of a plea offer for time served is plausible since the evidence against petitioner was very strong and even if petitioner was acquitted he would still have served his time. The prosecution had very little, if anything, to lose by taking the case to trial. Petitioner's only benefit, a small one at that, would have been one less conviction in a criminal history of many convictions. For a person who insists he is innocent and thinks he has the evidence to back it up, there would be no reason to accept the alleged plea deal.

Petitioner carefully avoids claiming that he would have probably taken the plea deal. All he says is that his lawyer deprived McIntosh of the chance "to let McIntosh decide if he would accept the offer or if this was an option McIntosh would consider." This is not evidence of a reasonable probability he would have accepted the offer nor is it proof that the court would accept the plea deal and the government would leave it open for petitioner to accept.[4] Under *Missouri v. Frye,* 132 Sup.Ct. 1399 (2012), petitioner must show that the alleged plea deal would

---

[4] The petitioner does not contradict the assertion of the government that it never offered a formal plea; rather, he asserts that "The government was not the only prosecutor on the case." The sentence is nonsensical because the government is the only prosecutor in any federal criminal case. I do not count this against petitioner. What I think he meant is that there might have been another assistant prosecutor who did make a plea offer but formal plea offers cannot be made without supervision by the leadership of the office. There is no evidence that a formal plea offer was made. There is no claim that petitioner has ever received a draft of a written plea agreement. What petitioner requests is BOP recorded phone conversations between him and his attorney to show that petitioner and his attorney "talked about this subject with Mr. Levine." I do not believe that recordings of calls are kept for longer periods of time by BOP. Assuming the tapes are available and assuming that defense counsel did, in fact, talk about plea deals with the government, there remains no proof of the existence of a formal plea agreement or, as stated above, no showing that the guilty plea deal as described by petitioner would probably have been accepted by the prosecution or the court.

probably have gone forward in order to show he was prejudiced by the failure of defense counsel to have advised him of a proposed plea deal.  Petitioner has not made this showing.[5]

Petitioner argues that I was biased in my rulings during trial.  My rulings are all contained in the trial record and the time to raise bias was on direct appeal.  It was not raised on appeal and so it is procedurally defaulted in any further proceedings like the § 2255 before me now.   In any event, the evidence of guilt was so strong that fundamental miscarriage of justice cannot be proven.  If I erred at all in this regard it was my refusal to enhance the guideline by finding that petitioner had obstructed justice.  If anything, I erred in denying the prosecution's motion on obstruction perhaps out of sympathy at petitioner's desperate and somewhat creative attempt, more or less politely offered, to escape conviction.

Petitioner finally criticizes appellate counsel for failing to challenge his sentence on the basis of *Alleyne v. United States,* 133 S.Ct. 2151 (2013), and *Apprendi v. New Jersey,* 530 U.S. 466 (2000).  McIntosh's direct appeal ended with an opinion issued December 12, 2012, followed by a cert. denial in February 2013.  Between the affirmance and the cert. denial petitioner filed the present § 2255 petition.  In July he asked the Court of Appeals to recall the mandate issued on appeal and, in the same month, the motions judge denied the recall motion.  Now the petitioner wants to bring the sentencing issues here and seeks permission to supplement his §2255 petition.

I deny the motion to supplement on the grounds that appellate counsel was not ineffective in deciding not to raise *Apprendi* or *Alleyne*.

---

[5] Having heard petitioner testify and speak in court, I doubt that petitioner could bring himself to admit to committing the offense with which he was charged.  I do not know whether the prosecution would have accepted an entry of a plea of guilty with a denial of factual guilt as permitted in *North Carolina v. Alford,* 400 U.S.25 (1970).  I doubt that I would be able to accept it under the established practice of dealing with *Alford* pleas.

The *Apprendi* rule was not violated. Certain facts which increase the applicable penalty must be proved beyond a reasonable doubt but the Supreme Court expressly excludes "the fact of a prior conviction" from this requirement. The punishment for his offense was increased because of the fact of a prior conviction. Even if there was a requirement of proof of the fact of prior conviction, that requirement was satisfied by stipulation and the Judgment and Commitment Order in the Escape case was put into evidence, and the statute applicable to the Escape case was punishable by imprisonment for a term or five years or more.

The *Alleyne* rule is that any facts which increase a mandatory minimum sentence must be proved beyond a reasonable doubt. This was a change from precedent which did not require such proof. The offense in this case did not carry a mandatory minimum and, as the motions judge in the Court of Appeals noted the "decision in *Alleyne*….does not affect this court's decision dated December 12, 2012."

Carlton McIntosh's petition for relief under 28 U.S.C. § 2255 is denied.

I have considered whether to grant a certificate of appealability. I decline to issue the certificate. The claims for § 2255 relief are, in some cases, defaulted for the failure to raise them on appeal or plainly wrong. None of the identified decisions of defense counsel come close to showing ineffective assistance. The one decision that could be criticized is the one that only a defendant can make, that is, whether to take the witness stand. That decision was made by petitioner and, all things considered, it was the only decision that had some support in reason. Had petitioner not taken the stand, the evidence against him would have been un-contradicted. Once he took the stand, his object was to conflate the mandate he had to surrender on January 8 with the non-mandatory option to surrender to a designated institution. There were many places for him to surrender on January 8. His goal was to have his testimony raise a reasonable doubt

as to his guilt because he believed (mistakenly) that he did not have to surrender until an institution was designated. The testimony was not credible; his statements to law enforcement can be read, at best and with great effort, that it was unfair that he was unable to surrender to the designated institution. He explains why he did not surrender once January 8 arrived, but he never says that he did not understand that the surrender date was January 8 and told unequivocally that after that date he was due to surrender now. His rationale was not a defense so much as it was a plea for mitigation.

In the context of this record there is no fairly debatable ground to take up on appeal.

ENTER:

James B. Zagel
United States District Judge

DATE: October 9, 2013